797 So.2d 289 (2001)
Clinton CRESSIONNIE a/k/a Tony Roberts, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01522-COA.
Court of Appeals of Mississippi.
March 20, 2001.
*290 Andrew Edward Franz, Gulfport, Attorney for Appellant.
Office of the Attorney General by John R. Henry Jr., Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Clinton Cressionnie has appealed from his conviction of escape from confinement and two counts of larceny. In this appeal, Cressionnie argues that the trial court erred when it refused to dismiss all pending charges on the ground that his constitutional right to a speedy trial was violated. Alternatively, he seeks reversal of his escape conviction on the basis that he was charged with felony escape when, at worst, his escape was only a misdemeanor. We affirm Cressionnie's conviction for reasons we will proceed to set out.

I.

Facts
¶ 2. Cressionnie, while in the custody of Lamar County law enforcement officials to *291 answer a grand larceny charge pending in neighboring Pearl River County, escaped and stole a truck and two bicycles. After being recaptured, Cressionnie was indicted for felony escape and two counts of grand larceny by a Lamar County grand jury. Before he could be tried on this indictment, Cressionnie managed to escape once again and fled to the State of Florida where he was subsequently arrested and detained, both on the pending Mississippi charges and for certain offenses committed in Florida during the period that he was a fugitive. Mississippi prosecutors promptly filed an extradition request for Cressionnie's person, but Florida elected to retain him until the Florida charges were resolved.
¶ 3. Cressionnie completed his Florida sentence on July 31, 1998, and was, at that time, extradited back to Mississippi where he was ultimately tried and convicted on the three pending counts in Lamar County arising out of his first escape.

II.

Issue One: Speedy Trial
¶ 4. Cressionnie's principal complaint is in regard to the failure of the State of Mississippi to afford him a speedy trial after his recapture in Florida. The record reflects that Cressionnie formally demanded a speedy trial in a writing filed with the Lamar County Circuit Clerk on December 3, 1997. At the time, Cressionnie was incarcerated in the State of Florida serving a sentence for crimes committed during the time he was a fugitive from justice in Mississippi. In that motion, Cressionnie indicated his willingness to waive extradition for purposes of standing trial. There is no indication in the record that the State took any extraordinary action in response to that motion other than to continue to periodically inquire of prison officials in Florida as to when Cressionnie might be released from incarceration and to ensure that Florida would, at that point, honor the detainer issued by the State of Mississippi against Cressionnie's person.
¶ 5. In due course, Cressionnie completed serving his sentence in Florida and was released by officials of that state into the custody of Mississippi law enforcement officials on July 31, 1998, at which time he was transported to Lamar County and ultimately tried and convicted.
¶ 6. Cressionnie now argues that he was denied his constitutional right to a prompt trial guaranteed him under the Sixth Amendment to the Constitution of the United States. He relies upon the United States Supreme Court case of Smith v. Hooey, which held that, once a prisoner makes demand for speedy trial on any pending charges in another jurisdiction, that other jurisdiction has "a constitutional duty ... to make a diligent, good-faith effort to bring [the prisoner] before [that jurisdiction] for trial." Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).
¶ 7. The trial court held that, having issued a detainer on Cressionnie's person, the State had done all that it could to bring Cressionnie to trial until such time as the State of Florida was willing to honor the detainer and surrender custody of Cressionnie to Mississippi officials. The court correctly indicated that Florida was under no legal obligation to extradite Cressionnie back to Mississippi so long as it had actual custody of Cressionnie and was determined to compel him to answer for crimes committed within that jurisdiction.
¶ 8. However, we conclude that the trial court erred as a matter of law when it failed to consider an alternate set of circumstances in which Cressionnie could have been speedily returned to the State of Mississippi for trial of the matters pending *292 in this State. Rather than have him returned to the full custody of the State of Mississippi, it was possible to seek his temporary return for the limited purpose of standing trial. A number of states have entered into an interstate compact setting out the procedure among member states to transfer defendants to stand trial and then be returned to the custodial state; however, Mississippi has not passed that uniform law. Nevertheless, the State concedes in its supplemental brief that the Governor of this state "may request the temporary possession of the body of ... a prisoner for trial here." The State then seeks to avoid the consequences of that concession by saying that the record does not indicate whether the Governor made such a request. That argument begs the question. Insofar as Cressionnie is concerned, the State of Mississippi is a monolithic entity such that the prosecuting district attorney and the Governor are indistinguishable. The prosecution cannot excuse the failure of the State to act by ascribing that inactivity to the Governor. This Court has little doubt that, as to all such activities regarding interaction between states, the initiating force for such requests is the prosecution team and that the Governor acts (or declines to act) only upon receiving such a request. The failure of the Governor to request temporary custody of Cressionnie for trial must be traced directly to the failure of the prosecuting attorneys to ask the Governor to make such a request.
¶ 9. There is, in addition, a procedure apparently initiated directly by the prosecution, in which a writ of habeas corpus ad prosequendum is issued to the jurisdiction holding the person of the defendant, demanding the surrender of that person for the limited purpose of trying him on charges pending in the issuing jurisdiction. See Brown v. State, 252 So.2d 885, 886-87 (Miss.1971). There is no indication in the record that the prosecution took any steps to have such a writ issued to the State of Florida. The State attempts to excuse this failure by pointing out that the State of Florida was not obliged as a matter of law to honor the writ. Certainly, that proposition applies with equal strength to the federal authorities; however, we must observe that, under principles of comity, the federal government complied with the writ in Brown.
¶ 10. While neither procedure is assured of success since there is no enforcement mechanism other than considerations of comity between the two affected jurisdictions, there does not appear any valid reason why the effort could not andif the defendant is affirmatively demanding a speedy trialshould not be made. The State argues in its supplemental brief that Florida authorities had unequivocally demonstrated their unwillingness to surrender the person of Cressionnie until he had completed his sentence for Florida offenses. We find the argument unconvincing since it is based entirely on Florida's reluctance to extradite Cressionnie for all purposesa markedly different proposition from a temporary return for purposes of standing trial.
¶ 11. For that reason, we determine that the period from which Cressionnie formally lodged his speedy trial demand, which was December 3, 1997, until the time he was physically returned to the State of Mississippi to face charges, which was July 31, 1998, must be weighed against the State when determining whether Cressionnie's constitutional right to a speedy trial was violated. The State may not reasonably decline to pursue an available procedure that would permit it to satisfy a speedy trial demand from a defendant in the custody in another state *293 simply because the procedure is not absolutely guaranteed of success.
¶ 12. Despite the foregoing observations, we note that for an extended period of time during his Florida incarceration, Cressionnie actively resisted any effort to return him to Mississippi. Additionally, the only real prejudice he alleges for the delay in being tried in Mississippi is the fact that he was prevented from the possibility of serving his Florida sentence and any possible Mississippi sentence concurrently. While Smith v. Hooey, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) recognizes this as a legitimate concern, the period in question covered only seven months. Even had Mississippi authorities promptly begun some process to attempt to gain Cressionnie's presence immediately after his speedy trial demand received in December 1997, there would have been some inevitable delay in pursuing the procedures and actually transporting him to Mississippi and conducting the trial. These delays would, in all probability, have eaten significantly into the time from December 3, 1997 until July 31, 1998 when Cressionnie was actually returned to this state, the result being to further decrease the available period that Cressionnie could have potentially been serving two sentences concurrently.
¶ 13. Because of the minimal adverse impact on Cressionnie occasioned by the prosecution's failure to pursue the possibility of his temporary return to this state for the limited purpose of standing trial, we decline to find reversible error. It should be understood, however, that this result should not be read as condoning the State's failure to make any effort through available channels, even if informal and not assured of success, to seek the temporary return of a defendant held in another jurisdiction who has formally demanded that his constitutional right to a speedy trial be honored.

III.

Issue Two: Felony or Misdemeanor Escape
¶ 14. Cressionnie was convicted and sentenced for an escape constituting a felony under Section 97-9-49 of the Mississippi Code of 1972. In this appeal, he argues that he was only guilty of a misdemeanor escape since, at the time he fled confinement, he was being held on pending charges rather than serving a sentence for a criminal conviction. Cressionnie cites the case of Williams v. State in support of his argument. Williams v. State, 420 So.2d 562 (Miss.1982). In that case, the Mississippi Supreme Court held that a prisoner who escaped after being convicted of a felony but who had not yet been sentenced could not be prosecuted for felony escape under an earlier version of Section 97-9-49 of the Mississippi Code, which related solely to persons "confined in any jail upon any conviction for a criminal offense." Miss.Code Ann. § 97-9-49 (Supp.1981); Williams v. State, 420 So.2d at 563. The court held that, for purposes of that code section, "conviction" meant both a guilty verdict and an actual judgment of sentence, so that the only crime Williams could have committed by his escape was a violation of then-existing Section 97-9-51, which provided misdemeanor penalties for one escaping while "lawfully imprisoned in any jail." Miss.Code Ann. § 97-9-51 (Supp.1981) (repealed 1983).
¶ 15. After Williams was decided, the Mississippi Legislature repealed Section 97-9-51 and substantially amended Section 97-9-49. The revised version of Section 97-9-49 was in effect at the time of Cressionnie's escape. In pertinent part, the section provides that, if a prisoner is being held on felony charges, whether he has *294 been convicted or not, then an escape may be punished by a term not to exceed five years in the penitentiary. Miss.Code Ann. § 97-9-49(1) (Rev.1994). Only in the circumstance where the prisoner is being held on pending misdemeanor charges does the statute permit an escape to be punished by the lesser sentence of a term not exceeding one year in the county jail. Miss.Code Ann. § 97-9-49(1) (Rev.1994).
¶ 16. Admittedly, as Cressionnie points out, the felony provisions of the statute still contain the provision found in the earlier version of the statute that says that the sentence shall "commence at the expiration of his former sentence." Miss. Code Ann. § 97-9-49(1) (Rev.1994). The Williams court had relied upon that language to support its conclusion that a person not yet sentenced could not fall under the provisions of the statute since there was no former sentence in place at the time of the escape. Williams v. State, 420 So.2d at 563. While this language is somewhat troubling in the circumstance where there is no former sentence, we conclude that the plain language preceding that passage making clear that the felony provisions apply to one in custody "by virtue of an arrest on a charge of felony" controls the question. The logical conclusion is that a defendant convicted of felony escape who was, at the time of his escape, not the subject of a prior sentence may simply have his sentence for the escape begin to run immediately rather than have to await the completion of another sentence.
¶ 17. At the time of his first escape for which he was indicted and convicted in this proceeding, Cressionnie was being held on pending felony charges in Pearl River County. Therefore, his escape exposed him to the harsher penalty of up to five years imprisonment in the state penitentiary as provided in Section 97-9-49 and the trial court committed no error in proceeding throughout the trial on that basis.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY OF CONVICTION OF COUNT I, ESCAPE, AND SENTENCE OF FIVE YEARS AS AN HABITUAL OFFENDER; COUNT II, GRAND LARCENY, AND SENTENCE OF FIVE YEARS AS AN HABITUAL OFFENDER WITH SAID SENTENCE TO RUN CONSECUTIVE TO THE SENTENCE IN COUNT I; COUNT III, PETIT LARCENY, AND SENTENCE OF SIX MONTHS, WITH SAID SENTENCE TO RUN CONCURRENT WITH THE SENTENCES IMPOSED IN COUNTS I AND II, ALL TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.