786 So.2d 868 (2001)
Paul LABBE, et al.
v.
CHEMICAL WASTE MANAGEMENT, INC., et al.
No. 2000-1772.
Court of Appeal of Louisiana, Third Circuit.
May 2, 2001.
*869 Lydia Ann Guillory-Lee, Attorney at Law, Mark Anthony Delphin, Delphin Law Firm, Lake Charles, LA, Eulis Simien, Jr., Simien & Simien, Baton Rouge, LA, Counsel for Paul Labbe and Valtelene Labbe.
Cornelius R. Heusel, Thomas Patrick Hubert, Jones, Walker, New Orleans, LA, Counsel for Chemical Waste Management, Inc.
Court composed of WOODARD, AMY and PICKETT, Judges.
AMY, Judge.
The plaintiff filed suit against his employer asserting claims of intentional infliction of emotional distress and disability discrimination. The employer reurged a previously denied motion for summary judgment contending that the facts advanced by the employee were insufficient for the claims asserted. Summary judgment was entered in favor of the employer. *870 The plaintiff appeals. For the following reasons, we affirm.

Factual and Procedural Background
Paul Labbe, his wife, and his children filed suit against his former employer, Chemical Waste Management, Inc. (CWM). In the 1989 petition instituting the suit, Mr. Labbe alleged that he suffered an "emotional breakdown from job related aggravation of a pre-existing major psychiatric condition...." The claims of the 1989 petition and the subsequent supplemental petitions at issue here are Mr. Labbe's claims for intentional infliction of emotional distress and disability discrimination under La.R.S. 46:2251, et seq.[1]
Mr. Labbe contends that his supervisors at CWM were aware of a "pre-existing major psychiatric condition"[2] and that, despite this knowledge, job-related pressures were allowed to aggravate this condition. Principally, Mr. Labbe contends that, in the midst of a unionization attempt at the CWM facility where he was employed, Personnel Director James Guy "Hank" Hankins and General Manager Clyde William "Bill" Kitto enlisted his assistance in campaigning against the union. He alleges that despite hostility from pro-union employees, he received no support from the company and that, eventually, as the pressure from the situation mounted, he intended to apply for a janitorial position. This position would have allowed Mr. Labbe to work day shifts, rather than rotating shift work. He contends that, despite knowledge that he was going to do so, the job requirements for the position were amended to include a typing requirement. Mr. Labbe asserts that the employer was aware that he could not perform this task as he had recently returned to work after hand surgery. Mr. Labbe also contends that at the time he was assigned to the truck wash area of the facility, he was assigned to rotating shifts and that he requested assignment to only day shifts to better suit his health needs. The request was denied. While the allegations are varied, and instances, encounters, and circumstances are pointed out as support for the plaintiffs contention that there was retaliation against him, the above scenario is the core of the factual background. These actions by the company and its employees, the plaintiff contends, are indicative of behavior sufficient for recovery for intentional infliction of emotional distress and disability discrimination.
In January 1995, CWM filed a motion for summary judgment seeking resolution of the intentional infliction of emotional distress and disability discrimination claims. The motion was denied at that time.[3] In March 2000, following the 1996 and 1997 amendments to La.Code Civ.P. art. 966, CWM filed a Motion to Reconsider *871 Motion for Summary Judgment on the Issues of Intentional Infliction of Emotional Distress and Disability Discrimination. With regard to the disability claim, CWM asserts that, even if it could be established that it had knowledge of Mr. Labbe's stress-related problems, providing day-shift work in this situation would have changed an "essential function" of his particular job at that time. CWM points out that, after he was denied the change to day-only shifts, he was able to complete his rotating schedule in the truck wash area. As far as discrimination in seeking the janitorial position, which would have provided day-shift work, CWM asserts that Mr. Labbe never actually applied for the position. For these reasons, it contends there can be no claim of discrimination. Finally, CWM asserts that there can be no claim that reasonable accommodations were not made to facilitate Mr. Labbe's conditions since his deposition testimony reveals that he does not feel capable of returning to any type of work environment. With regard to the intentional infliction of emotional distress claim, CWM argues that the varied incidents Mr. Labbe contends entitle him to recovery, even if true, do not rise to the level of extreme and outrageous conduct required for recovery under this theory.
The trial court entered summary judgment, referring to the denial of the earlier motion for summary judgment and stating:
One way or another, I wouldn't be bound by the comments or the appreciation of another judge, especially in a situation where there has been a pretty drastic change in the law. I mean, I characterize it as drastic.
It used to be that if there was the possibility of a scintilla of evidence that the plaintiff could submit that summary judgments were denied, and now especially when the plaintiff has the burden of proof at trial on issues, we require them to present that here and to show that they would be able to present sufficient evidence at trial.
And based on the change in the law and on the standards set out as far as intentional infliction of emotional distress in White v. Monsanto[4] and in cases like Khatibi[5] and the other cases that the defendant has cited on disability discrimination, I'm going to grant both motions for summary judgment.
The plaintiff appeals, assigning as error the granting of the summary judgments for both the intentional infliction of emotional distress and the disability discrimination claims.

Discussion
La.Code Civ.P. art. 966(C)(2) indicates that, although the burden of proving entitlement to summary judgment remains with the movant, if the adverse party bears the burden of proof at trial, the movant is not required to negate all "essential elements" of the adverse party's claim. Rather, the movant must "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Id. If, at that point, the adverse party does not "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." Id. In this case, the trial court's reasons evidence the importance of La.Code Civ.P. art. 966(A)(2), which instructs that the procedure is now favored. *872 This provision was enacted in 1996, after the first motion for summary judgment filed in this case was unsuccessful.
On review of a summary judgment, the appellate court considers the matter de novo. Doerr v. Mobil Oil Corp., 00-947 (La.12/19/00); 774 So.2d 119. Further, the reviewing court "asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law." Smith v. Our Lady of the Lake Hosp., Inc., 93 2512, p. 26 (La.7/5/94); 639 So.2d 730, 750.

Intentional Infliction of Emotional Distress
We first consider whether CWM has satisfied its burden in obtaining summary judgment insofar as the plaintiff's claim for intentional infliction of emotional distress is concerned. Although workers' compensation is the exclusive remedy available to an employee against an employer for work-related injuries, La.R.S. 23:1032(B) provides an exception to this general rule in the event that it arises from an intentional or deliberate act.[6] In White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991), the Louisiana Supreme Court explained that a plaintiff seeking damages for intentional infliction of emotional distress must prove: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."
With regard to the first element, the supreme court has stated that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." White, 585 So.2d at 1209. Simply put, "[t]he test for outrageous conduct is that the jury when hearing of the conduct would say `that's outrageous!'" WILLIAM E. CRAWFORD, LOUISIANA CIVIL LAW TREATISE, TORT LAW § 12.8 at 181 (2000).
As for the intent element, that of desire or knowledge that severe emotional distress is certain or substantially certain to result: "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." Reeves v. Structural Preservation Systems, 98-1795, p. 9 (La.3/12/99); 731 So.2d 208, 212. In Reeves, the supreme court reviewed jurisprudence on this element, explaining:
"`Substantially certain to follow' requires more than a reasonable probability that an injury will occur and `certain' has been defined to mean `inevitable' or `incapable of failing.'" Jasmin v. HNV Cent. Riverfront Corp., supra at 312. "[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the `substantial certainty' requirement." Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4 Cir.1993), writ denied, 629 So.2d 347 (La.1993). *873 "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Id. (citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La.App. 4 Cir. 1991).)
Id. at p. 9-10; 213.
Initially, we point out that many issues of fact remain in this case. The depositions, affidavits, and documents in the record indicate the presence of issues regarding the timing and extent of the supervisor's knowledge of the plaintiff's preexisting mental illness and, more importantly, differences in the actors' appreciation of events. Where the plaintiff may have seen animosity, revenge, or retribution from his supervisors or fellow employees, his supervisors have a different appreciation of events. However, despite these differing versions of events, the record supports the granting of the motion for summary judgment with regard to the intentional infliction of emotional distress claim, because these factual issues are not issues of material fact, and therefore, do not render this matter inappropriate for summary judgment under La.Code Civ.P. art. 966. "A fact is `material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Smith, 93-2512, p. 27; 639 So.2d at 751. The law applied to this case reveals that, even if all inferences of credibility, intent, and fact were made in favor of the plaintiff, his evidence would be insufficient to satisfy his burden of proof at trial. Thus, the remaining factual issues are not material.
In sum, even with an allegation that the plaintiff met with retaliatory acts after his anti-union work, no conduct alleged here was extreme and outrageous. Given the background present here, it cannot be said that the employer's asking an employee for assistance in opposing the union is "extreme" or "outrageous" as is required in intentional infliction of emotional distress claims. Furthermore, it seems to be unquestioned that the plaintiff had preexisting interest in the opposition at the time his help was enlisted by his supervisors due to his experience with this particular union at a prior workplace and had negative feelings about it.[7]
Neither are any of the other workplace incidents, even if accepted as true, so "extreme" or "outrageous" in nature as to satisfy the required burden of proof. For instance, the plaintiff complains of verbal altercations, and even statements construed as threats, with a fellow worker allegedly stemming from the union activities. While these difficulties may have had a negative impact on the plaintiff, and he may have been justified in feeling fearful or less than supported by his supervisors following the event, it is simply not the type of conduct required for recovery under a theory of intentional infliction of *874 emotional distress. The plaintiff asserting that it is this extreme is insufficient. As stated in White, 585 So.2d at 1209:
Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." Restatement, supra, comment d, § 46; Prosser and Keaton, The Law of Torts, § 12, p. 59 (5th ed. 1984)
While certainly unpleasant, and perhaps "inconsiderate and unkind" as described above, the verbal encounters, as alleged, are insufficient to prevail on a cause of action for intentional infliction of emotional distress.
In his brief, the plaintiff also discusses exposure to what he describes as hazardous and toxic substances at the chemical waste disposal site and his fears related to this exposure. He further contends that a number of regulations were violated during this period, giving rise to concerns for his safety. Although the issue of intentional exposure was addressed by a panel of this court in the prior appeal held on this matter, see Labbe v. Chemical Waste Management, Inc., 99-1562 (La. App. 3 Cir. 3/29/00); 756 So.2d 613, writ denied, 00-1211 (La.6/23/00); 765 So.2d 1040, we have again considered it here. In Reeves, 98-1795, p. 7; 731 So.2d 208, 211, the supreme court reviewed jurisprudence regarding claims of an unsafe work environment and ultimately concluded that the courts of this state "have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment." Indeed, in Reeves, the supreme court reversed a finding against the employer where the plaintiff alleged injury due, in part, to violation of OSHA standards. Likewise, the violations, as alleged and considering the context of them occurring at a chemical waste disposal facility, do not rise to the level of "extreme" or "outrageous" behavior, nor do they meet the "substantial certainty" factor required for this cause of action.
We are not saying that the instances alleged by the plaintiff did or did not occur, nor are we determining whether any injury was sustained. Rather, we conclude that the facts as alleged, even if true, are insufficient. For these reasons, we conclude that the summary judgment disposing of the plaintiff's claim for intentional infliction of emotional distress was appropriate.

Disability Discrimination
The plaintiff also alleges that, despite knowledge of his special needs, CWM failed to make reasonable accommodation to meet those needs and, in fact, "went out of its way to deny him jobs that he would have qualified for without accommodation." As examples, Mr. Labbe contends that he requested to be moved from his position that required full-shift rotation to a day-only shift, but that this move was denied. He also asserts that, after he made it known that he was going to "bid down" to a janitorial position which was a day-shift position, the job description was changed to include a typing requirement, a requirement Mr. Labbe contends Mr. Hankins knew he could not meet due to a recent hand surgery.
The discrimination cause of action was instituted by the plaintiff's 1992 first supplemental and amending petition and was brought under La.R.S. 46:2251, et. seq. Although portions of this provision have *875 since been repealed,[8] at the time of the alleged discrimination, La.R.S. 46:2254 provided, in part:
C. An employer, labor organization, or employment agency shall not:
(1) Fail or refuse to hire, promote, or reasonably accommodate an otherwise qualified individual on the basis of a handicap when it is unrelated to the individual's ability with reasonable accommodation to perform the duties of a particular job or position.
The terms "otherwise qualified handicapped person" and "reasonable accommodation" as used in La.R.S. 46:2254(C)(1) were defined as:
(4) "Otherwise qualified handicapped person" means:
(a) With respect to educational services, a handicapped person who meets the academic and technical standards requisite to admission or participation in educational and extracurricular activities and programs.
(b) With respect to other services, a handicapped person who meets the essential eligibility requirements for the receipt of such services.
. . . .
(19) "Reasonable accommodation" means an adjustment or modification to a known physical limitation of an otherwise qualified applicant or employee which would not impose an undue hardship on the employer. This shall not require an employer to spend more for architectural modifications than that amount now allowed as a federal tax deduction. However, "reasonable accommodation" shall not be construed to impose on any private sector employer, unless otherwise required by law under any contract with a federal, state or local governmental body or subdivision, any additional costs in the hiring or the promotion of a handicapped person. Undue hardship is determined on a case by case basis taking into account the following:
(a) Employee for which accommodation is to be made
(b) Specific disability of employee
(c) Essential job duties of employee
(d) Working environment
La.R.S. 46:2253.[9]
Our review of the submission indicates a number of difficulties barring recovery on Mr. Labbe's discrimination claim. With regard to his contention that he was subject to discrimination when, in July and August 1988, his request to work only day-shifts during a ten-day period was denied, it is unclear that the request was for a "reasonable accommodation." Rather, from the testimonies of Mr. Hankins and Mr. Kitto it is clear that it was not. According to Mr. Hankins, the plaintiff requested an assignment to the position in the truck wash area several months prior to the request for shift-reassignment and that, at the time he did so, he was aware that it could entail rotating shifts. He testified as to the potential for shift work and stated that: "we had a special run where we had a more than normal amount of trucks come in[.]"[10]
*876 Furthermore, regarding the janitorial position Mr. Labbe puts at issue in the discrimination claim, we find this issue is appropriate for summary judgment as well. He contends that, when he made it known that he intended to "bid-down" to the janitor position, a day-shift position, Mr. Hankins changed the job description to include a typing requirement.[11] On this point the trial court referenced the fourth circuit opinion in Khatibi v. William B. Reily & Co., Inc., 97-0392 (La.App. 4 Cir. 11/26/97); 703 So.2d 187. In Khatibi, the fourth circuit referred to the specific language of La.R.S. 46:2253(4)(a) and concluded that: "[T]he statute requires an employer to make reasonable accommodation so that the employee who becomes disabled can continue to perform the same job. Nothing in the statute requires an employer to give the employee a new job." Id. at p. 5; 190. That reasoning is applicable in the instant case as well. The plaintiff indicated a desire to apply for a wholly different position than the one he had been performing. Furthermore, while Mr. Labbe indicates that he expressed an interest or intent to apply for the janitorial position, he never did so.[12]
We conclude that these factors, or absence thereof, preclude recovery by the plaintiff given the facts alleged. Accordingly, summary judgment was appropriate for the claims of disability discrimination.

DECREE
For the foregoing reasons, the summary judgment granted by the trial court is affirmed. All costs of this appeal are assigned to the plaintiffs, Paul Labbe, et al.
AFFIRMED.
WOODARD, J., concurs in the result.
NOTES
[1] See now La.R.S. 23:301, et seq.
[2] The record indicates that, over the course of a number of years, Mr. Labbe has been diagnosed by mental health professionals as suffering from paranoid schizophrenia and post traumatic stress syndrome.
[3] Subsequently, in April 1996, the plaintiff amended his petition seeking compensatory damages as well as punitive damages under La.Civ.Code art. 2315.3 for exposure he alleges resulted from CWM's handling, storage, or transportation of hazardous/toxic chemicals. He asserted that "acts and omissions of defendant were performed with a conscious and deliberate disregard and indifference to the health and well-being of petitioner, Paul Labbe and a wanton and reckless disregard for public safety." CWM moved for summary judgment on the issue of the availability of punitive damages asserting that the plaintiff would be unable to demonstrate that any exposure was intentional. The motion was granted by the trial court and affirmed on appeal. See Labbe v. Chemical Waste Management, Inc., 99-1562 (La.App. 3 Cir. 3/29/00); 756 So.2d 613, writ denied, 00-1211 (La.6/23/00); 765 So.2d 1040.
[4] White v. Monsanto Co., 585 So.2d 1205 (La. 1991).
[5] Khatibi v. William B. Reily & Co., Inc., 97-0392 (La.App. 4 Cir. 11/26/97); 703 So.2d 187.
[6] La.R.S. 23:1032(B) provides:

Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
[7] The following colloquy from Mr. Kitto's deposition is contained in the record and indicates the following with regard to Mr. Labbe's initial participation:

Q And y'all were going to do anything y'all could to prevent it, right?
A No. I certainly haven't said that. That's a very strong statement. I think what we would attempt to do was to make sure that the employees really understood all their options and to do the best job we can at educating this so that when they vote they're voting out of knowledge and not out of fear.
Q And Mr. Labbe was one of the people that y'all used?
A Right.
Q To voice the opinions of the company?
A For which he volunteered, I might add.
Q But, also, you didn't say, "No, Paul, we don't want your help," right?
A Well, that's obvious.
[8] See now, generally, La.R.S. 23:301, et seq.
[9] See now La.R.S. 23:322.
[10] During his deposition, Mr. Kitto was questioned as to "any reason right now why at the time Mr. Labbe was working [ ] he couldn't have gone on a straight day shift?" He responded: Well, it depends onyou know, if the unit is rotating, everybody rotates. We don'twe don't distinguish a day shift person on a rotating shift if the unit is rotating. If he was in a unit that was rotating, he could not get a straight day job in that unit."
[11] As for the addition of the typing requirement, Mr. Kitto testified:

And the reason we changed the nature of those jobs was that we wanted to combine computer entry on federal reserve and the mailing and some additional typing along with light cleanup work in the new administration building. And we never changed the job title from janitor, but we did include a bunch of other duties which require skills.
[12] Also left unresolved by the evidence of his submission is whether Mr. Labbe would be able to satisfy the requirement that he would be "otherwise qualified" for any of the positions at issue given the fact that during the deposition testimony entered into evidence, Mr. Labbe expressed the belief that he would be unable to return to any type of work.