# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02050-COA

**DAVARIOUS LEVONTE TALLEY**                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2013 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A DWELLING HOUSE AND SENTENCED TO TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 05/19/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     A Scott County jury returned a guilty verdict against Davarious Levonte Talley for the charge of burglary of a dwelling house. The Scott County Circuit Court sentenced him to twelve years in the custody of the Mississippi Department of Corrections. Talley now appeals, claiming the trial court improperly failed to strike certain inadmissible hearsay testimony. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Talley, a nineteen-year-old former college student, was indicted for the December 22, 2012 burglary of Damekia Boone's home in Forest, Mississippi. Talley lived in the same neighborhood as Boone. At trial, six witnesses testified for the State. Boone testified that her home had been burglarized while she and her children were visiting her mother that evening. Missing from her home were an Xbox Kinect Star Wars Edition video game and a pair of Jordan athletic shoes. Later, she noticed her GPS was gone. Damage was done to bedroom windows that were closed and locked when she left, but had been pried open. Also, her back door, which she had locked upon leaving, was unlocked. No one had been given permission to enter her house.

¶3.     Prayer Wright, a thirteen-year-old eyewitness to the crime who knew Talley through her brother, testified that on the date at issue, she had spent the night with her friend, Nikki Martin, who lived near Boone's house. From Nikki's house, she observed Talley watching Boone's house from a "violet" van. Later, Prayer saw Talley enter Boone's house through a window after the Boones left home. Additionally, Nikki testified she saw Talley sitting inside his mother's van that evening parked outside Boone's house. Nikki told her mother, who called the police. Keontavious Gardner, a fifteen-year-old, testified that Talley told him he had seen Boone cashing a check that day, and that he intended to rob her later that evening. Keontavious declined Talley's invitation to join him in the burglary.

¶4.     Keshun Chandler, a sixteen-year-old eyewitness to the burglary, testified that he observed Talley park his van in front of Boone's house and climb through a window. At the

time, Keshun was at Nikki's house with Prayer. Keshun saw Talley exit the house through the back door with an Xbox and a GPS. Later that evening, Keshun and Talley went to a Texaco station, and Talley asked an individual there if he wanted to buy the Xbox. Keshun denied any involvement with the burglary.

¶5.    Officer Ricky Hoye of the Forest Police Department testified that approximately twenty minutes after he received a dispatch call about the burglary, he observed Talley sitting alone in the driver's seat of a maroon van parked on the side of a road scrolling through a GPS. Officer Hoye also saw an Xbox video game inside the van.

¶6.    Talley testified in his own defense. He denied telling Keshun he was going to rob the Boones. He blamed the burglary on Keshun. Talley testified that he saw Keshun enter the Boones' back window and exit through the back door with the video game and GPS. Talley stated he observed the crime nearby, from the yard of an individual named Poncho. Talley testified two other youths also went in the house with Keshun. Talley contended the stolen GPS was actually his, and that when he took Keshun to the Texaco, Keshun must have left the stolen Xbox in the van. Approximately one hour elapsed from the time Talley claimed he saw Keshun leave Boone's home to when Talley was picked up by the police.

¶7.    Perry Wright, Prayer's brother, also testified for the defense. Perry claimed that after Talley was arrested and jailed, he had a conversation with Keshun, and Keshun confided that he went in the house with Talley.

¶8.    The State called two rebuttal witnesses, Officer Hoye and Officer Joe Blakeney of the Forest Police Department. Officer Hoye clarified that he saw two Garmin GPS devices in

3

Talley's van, and the Xbox was behind the driver's seat. Officer Blakeney interviewed Talley, who told him he was unaware of the burglary, and that one of his friends must have left the stolen Xbox in his vehicle.

¶9.     After Talley was convicted and sentenced, he filed a motion for a new trial, which was denied.

## ANALYSIS

¶10.    Talley raises one issue on appeal – whether the trial court erred in declining to strike Prayer's hearsay testimony during defense counsel's cross-examination.

¶11.    Admission or exclusion of evidence will be reviewed by the appellate court for an abuse of discretion. *Osborne v. State*, 54 So. 3d 841, 845 (¶12) (Miss. 2011). "Reversal is proper only where the error adversely affects a substantial right of a party." *Id.* (citation omitted).

¶12.    During the State's case-in-chief, Prayer testified about what she saw from Nikki Miller's house the night of the burglary. Nikki's house was near Boone's house, and Prayer was spending the night with Nikki. Prayer, Nikki's mother, and her sister were all in the house. During cross-examination, Prayer testified:

> Q.      And what were y'all doing there at the house? . . . [W]hen you say that you saw him pull up and get out of his van. So where . . . at Nikki's house were you?
>
> A.      We [were] outside in the front yard.
>
> . . . .
>
> Q.      And you saw [Talley] pull up . . . and park his van and then do what?

4

A.    He went in the house.

Q.    [D]id you stay in front of Nikki's house?

A.    I was standing in the front of her house, and then I went back in the house and came outside and then he was in the house.

. . . .

Q.    You saw him come out of the house?

A.    Yes, sir.

Q.    Where did he come out from?

A.    The back door.

Q.    You can't see the back door from where you were, though, can you?

A.    No, but he came out the back door.

Q.    And you know that how?

A.    Because when . . . they [were] running through there and he came out the door.

Q.    Who is "they?"

A.    Keviana [(sister of Nikki's mother)] and her sister.

Q.    *Keviana and her sisters . . . told you this?*

A.    *[Y]eah, they [were] running.*

. . . .

A.    *And then they called my name, and then --*

Q.    *And they told you they saw him.*

A.    *Cause he – they said he ran around the building when he saw them.*

5

BY [DEFENSE COUNSEL]:  Your Honor, I object to her testimony and move to strike it, if she didn't observe any of this, and it appears that she didn't.

BY THE COURT: Her testimony is subject to cross-examination and it does not mean it should be stricken.  Your motion's overruled.

Q.      You did not actually see him go in that house, did you?

. . . .

A.      Yes, I saw him go through the window.

Q.      And you say these others are the ones that saw him – actually saw . . . this man right here actually come out of the house, right?

A.      Yes, sir.

Q.      *You didn't see him come out of the house?*

A.      *They called my name when they saw him.*

Q.      *I understand that but that's not my question.  You didn't see him come . . . out of the house, did you?*

A.      *No, sir.*

(Emphasis added.)  From this testimony, Prayer apparently saw Talley go into Boone's house, but she did not witness Talley emerging from the house.  Talley claims Prayer's testimony about seeing him leave Boone's house should have been stricken because she was relying on what her friends told her.

¶13.   "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Hearsay is generally inadmissible. M.R.E. 802. Undoubtedly, the statements made by Prayer about her friends seeing Talley leave the house are hearsay.  However, "a defendant cannot

6

complain on appeal concerning evidence that he himself brought out at trial." *Rogers v.
State*, 85 So. 3d 293, 296 (¶13) (Miss. 2012) (quoting *Fleming v. State*, 604 So. 2d 280, 289
(Miss. 1992)).  This rule includes evidence introduced as a result of cross-examination by
defense counsel.  *Id.* at (¶12).

¶14.    Here, the statements at issue were elicited by Talley's own defense counsel; so this
argument is without merit.  Regardless of whether Prayer saw Talley exit the house, the crime
of burglary involves "breaking and entering" the dwelling house; thus, testimony about
entering, not exiting, the house is the key.  *See* Miss. Code Ann. § 97-17-23 (Rev. 2014).
Prayer did see Talley enter the house through a window, and this testimony was not hearsay.
Additionally, Keshun testified he saw Talley enter and exit from the house.  Accordingly, any
error was harmless.

¶15.  **THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF
CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWELVE
YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF
CORRECTIONS IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED
TO SCOTT COUNTY.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON,
MAXWELL, FAIR AND JAMES, JJ., CONCUR.**