# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01286-COA

**TOMMY AMES A/K/A TOMMY LEE AMES**                                    **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2013 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF AGGRAVATED ASSAULT, AND SENTENCED TO TWENTY YEARS FOR COUNT I, WITH FIVE YEARS SUSPENDED, FIFTEEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND SENTENCED TO TWENTY YEARS FOR COUNT II, WITH FIVE YEARS SUSPENDED, FIFTEEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED – 10/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND ISHEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     After a jury convicted Tommy Ames of two counts of aggravated assault, the Circuit Court of Warren County sentenced him to two consecutive twenty-year terms of imprisonment in the custody of the Mississippi Department of Corrections. On appeal, he argues that during trial, the trial court erred in admitting certain witness testimony under Rule 804(b)(1) of the Mississippi Rules of Evidence and that he was denied a speedy trial.

¶2.     Finding no error, we affirm.

FACTS

¶3.     On November 2, 2007, Kenya Johnson and Christopher Blackmore traveled to Vicksburg, Mississippi, in a car driven by Johnson. As Johnson was driving down First East Street in Vicksburg, Ames, an acquaintance of Johnson's and a stranger to Blackmore, flagged them down. After Johnson stopped the car and rolled his window down, he and Ames conversed momentarily. At the end of Johnson and Ames's discussion, Ames opened one of the back doors of the car and entered the car. After that, Ames shot Johnson in the back of his head and in his neck. Ames also shot Blackmore in the back of his head. At some point, Johnson elbowed Ames, causing him to be ejected from the car. Immediately after the shooting, Johnson and Blackmore traveled, in the car, a short distance to the law office of Winfield & Moran, where Attorney Paul Winfield provided first-aid to them. Paul Winfield's secretary called 911, and paramedics arrived to transport the men to a hospital. Johnson and Blackmore survived the shooting.

¶4. At the time of the incident, Ames was on federal post-release supervision (PRS). During the four weeks after the incident, Ames hid out at his brother's house. After that, he relocated to Arkansas, where he was arrested by the United States Marshals Service. During a federal PRS-revocation hearing, Johnson testified against Ames, and Ames's counsel cross-examined Johnson. The hearing resulted in the revocation of Ames's PRS and his sentence of fifty months of imprisonment in the custody of the Federal Bureau of Prisons.

¶5. Approximately six months after his arrest by federal marshals, while incarcerated in the federal prison, Ames was indicted by the State of Mississippi for two counts of aggravated assault. About five years later, his case went to trial. During trial, the trial court deemed Johnson unavailable under Rule 804(b)(1) and allowed the State to read his prior testimony from the revocation hearing into evidence.

## DISCUSSION

### I. Johnson's Rule 804(b)(1) Testimony

¶6. On appeal, Ames argues that the trial court erred in deeming Johnson unavailable under Rule 804(b)(1) because the State failed to use reasonable, diligent efforts to secure his presence at trial. Ames highlights the fact that the State failed to issue a subpoena for Johnson and insists that Johnson's prior testimony should not have been admitted during trial. In response, the State argues that the record belies Ames's claims. The State points to the testimony of Investigator Dewayne Smith, who outlined the steps taken by the State to locate Johnson. The State also argues that it was not required to do everything conceivable to locate

3

Johnson and that "it would have been futile to prepare a request for [a] subpoena and a subpoena when the prosecution knew that Johnson could not be served since he had been missing for four years."

¶7. The hearsay exceptions found in Rule 804 of the Mississippi Rules of Evidence are inapplicable if the declarant is available. And, under that rule, if the declarant is available, then the in-court repetition of his statements constitutes inadmissable hearsay. *See* M.R.E. 804(b). As stated, Ames argues that the trial court erred in deeming Johnson unavailable under Rule 804(b)(1); however, the crux of his argument is that the court erred in admitting inadmissable hearsay testimony.

¶8. The standard of review for the admission or exclusion of evidence is well settled: "[It] will be reviewed by the appellate court for an abuse of discretion." *Talley v. State*, 164 So. 3d 516, 518 (¶11) (Miss. Ct. App. 2015) (citing *Osbourne v. State*, 54 So. 3d 841, 845 (¶12) (Miss. 2011)). "Reversal is proper only where the error adversely affects a substantial right of a party." *Talley*, 164 So. 3d at 518 (¶11) (citing *Osbourne*, 54 So. 3d at 845 (¶12)).

¶9. Under Rule 804(b)(1),

[t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination[, is excluded from the hearsay rule if the declarant is unavailable as a witness].

¶10. According to Mississippi Rule of Evidence 804(a)(5), a witness is unavailable if he

"[i]s absent from the hearing[,] and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means[.]" While the State must make a "diligent effort" to procure the witness's attendance, it is not required "to do everything conceivable." *Naylor v. State*, 759 So. 2d 406, 409 (¶7) (Miss. 2000) (citations omitted). A trial court's determination that the State made a diligent effort to procure the witness's attendance will not be disturbed on appeal unless the trial court abused its discretion. *Russell v. State*, 670 So. 2d 816, 827 (Miss. 1995) (citations omitted).

¶11.    During trial, which was held July 1-3, 2013, Investigator Smith testified that he had last seen Johnson on June 24, 2008, and that he and the State had been "in constant conversation about . . . Johnson" for nearly four years. Investigator Smith also testified that in attempting to locate Johnson, he had spoken with some of Johnson's "known associates" and "some informants that possibly knew [Johnson's] location and followed those leads." He further testified that he had sought the assistance of law enforcement in other jurisdictions. Investigator Smith stated that he had "used [a search engine similar to the National Crime Information Center] that helps [law enforcement] locate suspects [using the suspect's] name[,] address[,] possible location[,] and the nearest relative." He also stated that he had searched places in Warren County and Hinds County and that within the two years preceding trial, in attempting to locate Johnson, he had exhausted every possible tool and resource at his disposal.

¶12.    In *Naylor*, 759 So. 2d at 409-10 (¶11), a captain of the Lauderdale County Sheriff's

5

Department testified that, in attempting to locate an unavailable witness, his agents had made contact with the witness's parents, who refused to reveal the witness's location. *Id.* He also testified that he had made contact with the Philadelphia Police Department and Neshoba County Sheriff's Office and had staked out a child-care facility that the witness was reportedly running. *Id.* In that case, the Mississippi Supreme Court found that the State had made a diligent effort to procure the witness's attendance. *Id.* at 410 (¶16). Because the State's efforts in this case match its efforts in *Naylor*, we do not find that the trial court abused its discretion in concluding that the State made a diligent effort to procure Johnson's attendance at trial or in admitting his testimony under Rule 804(1)(b). This issue is without merit.

## II. Lack of Speedy Trial

### A. Constitutional Right

¶13. Ames argues that his constitutional right to a fast and speedy trial was violated by the 1,995-day delay between his arrest by federal marshals and his trial. In response, the State argues that the reasons for delay were not attributable to it and that Ames failed to show prejudice.

¶14. The right to a speedy trial is protected by the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890. To determine whether there was a speedy-trial violation, this Court applies the balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972), which requires us to examine

6

the following four factors: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.

### 1. Length of Delay

¶15. "The Sixth Amendment speedy-trial right attaches at the time of [the] formal indictment or information or [the] arrest—whichever occurs first." *Ben v. State*, 95 So. 3d 1236, 1242 (¶10) (Miss. 2012) (citation omitted). "[A] delay of more than eight months is considered presumptively prejudicial." *Id*. at (¶9) (citation omitted).

¶16. On August 20, 2008, while Ames was still serving his sentence in the federal prison, he was indicted for the aggravated-assault charges. Then, on October 7, 2011, after his release from the federal prison, he was taken into custody in Mississippi. So Ames was indicted before his arrest for the aggravated-assault charges, and his speedy-trial right attached when he was indicted. His trial began on July 1, 2013, which was more than eight months after his indictment. As such, the length-of-delay factor weighs in favor of Ames. While that factor alone is not sufficient for a reversal, a close examination of the remaining *Barker* factors is required. *DeLoach v. State*, 722 So. 2d 512, 517 (¶16) (Miss. 1998) (citing *Handley v. State*, 574 So. 2d 671, 676 (Miss. 1990)).

### 2. Reason for Delay

¶17. In *Barker*, 407 U.S. at 531, the United States Supreme Court stated:

> Closely related to [the] length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason

such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

¶18. The State issued a detainer warrant for Ames on April 2, 2008, and indicted him on August 20, 2008. On April 13, 2009, Ames asserted his right to a speedy trial. "[O]nce a prisoner makes demand for speedy trial on any pending charges in another jurisdiction, that other jurisdiction has 'a constitutional duty . . . to make a diligent, good-faith effort to bring the prisoner before that jurisdiction for trial.'" *Cressionnie v. State*, 797 So. 2d 289, 291 (¶6) (Miss. Ct. App. 2001) (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)).

¶19. More than four months later, on August 20, 2009, the trial court filed an order granting the State's request for a writ of habeas corpus ad prosequendum and an order to transport Ames from the United States Penitentiary in Pollock, Louisiana. In *Cressionnie*, 797 So. 2d at 292 (¶¶8-9), this Court recognized the issuance of a writ of habeas corpus ad prosequendum as one way of seeking the temporary return of a prisoner for the purpose of standing trial. While the procedure does not guarantee success, since there is no enforcement mechanism as between the state and the federal government, the State must still make the effort. *Id*. at 292-94 (¶¶10-11). By filing its request for a writ of habeas corpus ad prosequendum, the State satisfied the requirement that it make a diligent, good-faith effort to bring Ames to trial.

¶20. On September 16, 2011, the trial court signed an order that instructed the Warren County Sheriff's Department to take custody of Ames on October 7, 2011, after his release

from the federal prison. Ames was arraigned on October 14, 2011, and appointed counsel. Trial was set for March 19, 2012, and Ames was released on bond. As discussed below, over the next twenty and one-half months, trial was continued four times, and Ames's counsel was substituted five times.

¶21. On March 5, 2012, counsel for Ames, John W. Bullard, filed a motion to withdraw as attorney of record based on a conflict of interest due to the fact that he was employed as an assistant district attorney on the date of the crime alleged in the indictment. The trial court granted Bullard's motion, and Jerry Campbell was substituted as counsel the following day. On March 22, 2012, the trial was continued to September 10, 2012, and on that day, although the State was ready to proceed with trial, Ames failed to appear. Ames claimed that Campbell had not informed him of his trial date. Apparently, Campbell moved to withdraw as counsel that same day.[1] In ruling on Campbell's motion to withdraw, the trial court stated:

> Now, as to Mr. Jerry Campbell, then being substituted as counsel, there is some speculation[—]or[] the representation is made that the defendant didn't show up for his trial on that date. The State is ready for trial, a date is set, and yet on that date for the trial the defendant doesn't show up. Now, the defendant is going to say—apparently, he has represented that his attorney didn't tell him. There should have . . . been more than just the attorney. There would have been a court order setting the trial date. The defendant's bonding company knew of or should have known of the trial date. And so the Court certainly doesn't attribute that delay to the State. The defendant should have been here. Had he been here, he would have been tried, but he did not stay in contact with his attorney, his appointed attorney, and that attorney asked to withdraw[,] and that request was granted.

---

[1] The State alleges that Campbell moved to withdraw that same day.

¶22.    On September 14, 2012, the trial was continued to February 25, 2013.  On December 18, 2012, Bullard was again appointed counsel, and on December 20, 2012, Justin Jones was substituted for Bullard.  On February 7, 2013, the parties signed an agreed order to continue the trial to June 24, 2013.  On February 15, 2013, Jones filed a motion to withdraw as counsel because he accepted new employment and closed his law office.  On May 16, 2013, Michael Winfield, Paul Winfield's brother, was substituted as counsel.  On April 16, 2013, Ames was arrested and charged with felon in possession of a firearm.  On May 16, 2013, Kimberly Nailor was substituted as counsel due to a conflict of interest that arose as a result of Michael and Paul Winfield's relationship.  That same day, the trial court continued the trial to July 1, 2013, when it commenced.

¶23.    Bullard's, Michael Winfield's, and Jones's withdrawals cannot be attributed to Ames, and while the reason for the delay associated with their appointments and substitutions is a neutral one, this weighs slightly against the State.  Bullard and Michael Winfield both had a conflict of interest, and the reason for Jones's withdrawal was personal in nature and was in no way attributable to Ames.

¶24.    The reason for Campbell's withdrawal is unclear, but the record reveals that he was present for trial on September 10, 2012, when Ames failed to appear.  We cannot say that this delay was attributable to the State because the State was ready to proceed with trial.  While Ames claims he did not know his trial date because Campbell did not tell him, nearly six months had passed since the original trial setting.  Having appointed counsel did not absolve

10

Ames of his responsibility to inquire about his trial date, and he does not argue that Campbell told him not to appear for trial. This delay was caused by Ames.

¶25. Upon review, we find that the continuances were either agreed to, a direct result of changes in counsel, or a result of Ames's failure to appear. Responsibility for the changes in counsel and Ames's failure to appear have already been addressed. This factor favors the State.

### 3. Assertion of the Right

¶26. Ames asserted his right to a speedy trial on April 13, 2009, nearly eight months after he was indicted. Notwithstanding the assertion of his right, his trial did not commence until approximately four years later. This factor weighs in favor of Ames.

### 4. Prejudicial Effect of the Delay

¶27. There are three main considerations in determining whether the accused has been prejudiced by a lengthy delay: "(1) preventing oppressive pretrial incarceration[,] (2) minimizing anxiety and concern of the accused[,] and (3) limiting the possibility that the defense will be impaired." *Jefferson v. State*, 818 So. 2d 1099, 1108 (¶21) (Miss. 2002) (internal quotations omitted). "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *Sharp v. State*, 786 So. 2d 372, 381 (¶19) (Miss. 2001). "The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudice[] as a result of delay." *Id*. (citations omitted).

¶28.    Ames does not argue that his pretrial incarceration was oppressive. Instead, he argues that the delay caused him increased anxiety and concern. This assertion, however, lacks specificity. "[A]nxiety alone does not [always] amount to prejudice worthy of reversal." *Duplantis v. State*, 708 So. 2d 1327, 1336 (¶25) (Miss. 1998). Ames must show "how this anxiety manifestly impacted him or his family." *McBride v. State*, 61 So. 3d 138, 147 (¶31) (Miss. 2011). This he failed to do.

¶29.    Ames also argues that the delay impaired his defense because he was unable to locate two witnesses—Johnson and Ames's girlfriend at the time of the incident, Irene Ward. He insists that he was prejudiced by the delay because he was denied his right to confront Johnson. However, according to our supreme court, "testimony admitted under [Rule] 804(b)(1) does not violate the Confrontation Clauses of the federal and state constitutions." *Russell v. State*, 670 So. 2d 816, 829 (Miss. 1995) (internal quotation marks and citation omitted). Therefore, Ames was not denied his right to confrontation.

¶30.    Also, Ames does not explain how his inability to locate Ward prejudiced his defense. There was no subpoena issued for her, and Ames's counsel did not mention her when arguing prejudice in Ames's motion to dismiss based on the lack of a speedy trial. The record reveals that Ward was not present at the scene of the crime and that she was not with Ames in Louisiana. Therefore, she had no firsthand knowledge of Ames's whereabouts at the time of the crime. Ames has failed to show prejudice, and this factor weighs in favor of the State.

¶31.    While the delay was presumptively prejudicial, and Ames asserted his speedy-trial

right, we find that his constitutional right to a speedy trial was not violated. The State made a good-faith effort to bring him to trial while he was serving time in the custody of the federal prison, and the withdrawal of each of Ames's counsel, while not his fault, weighs only slightly against the State. The reason for one delay is due in large part to Ames's absence on the day of trial and withdrawal of counsel that same day. Ames also agreed to one of the four continuances. Furthermore, Ames has failed to show how he was prejudiced by the delay. This issue is without merit.

### B. Statutory Right

¶32. Ames argues that his statutory right to a speedy trial was violated by the 654-day delay between his arraignment and trial. Again, the State insists that it was not responsible for the delay and that Ames has failed to establish prejudice.

¶33. Under Mississippi Code Annotated section 99-17-1 (Rev. 2007), "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy . . . days after the accused has been arraigned." First, we calculate the number of days between arraignment and trial. Because 626 days passed between arraignment and trial, we must "consider each delay separately, because only those delays attributable to the State count toward the 270 days." *Sharp*, 786 So. 2d at 378 (¶5) (citing *Baine v. State*, 604 So. 2d 258, 264 (Miss. 1992)).

¶34. First, we consider the block of time between arraignment and the first date set for trial,

13

October 14, 2011, to March 19, 2012. "The necessary time for the accused and his counsel to prepare his trial must necessarily be left largely to the sound discretion of the trial judge, bearing in mind the facts and circumstances of the particular case." *Id.* at 378 (¶6) (citations omitted). Given the nature of the case and the amount of time that had elapsed since the commission of the alleged crime, the time given to allow Ames's attorney to prepare was not excessive; therefore, the time between arraignment and the first date set for trial does not count against either the State or Ames.

¶35. Next, we consider the block of time between Bullard's withdrawal and the next date set for trial—that is, March 5, 2012, to September 10, 2012. After Bullard withdrew, the trial court appointed Campbell. The trial was then continued to September 10, 2012, to allow Campbell time to prepare a defense. "A delay caused by the withdrawal of the defendant's attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State." *Manix v. State*, 895 So. 2d 167, 175 (¶13) (Miss. 2005) (citation omitted). This continuance was for good cause.

¶36. The next block of time was from September 10, 2012, to February 25, 2013. During that time, the State was ready to proceed to trial, but Ames did not appear. This delay cannot be attributed to the State. After Campbell withdrew as counsel, the trial was continued to February 25, 2013.

¶37. On February 7, 2013, the parties signed an agreed order to continue the trial to June 24, 2013. When a motion for a continuance is joined by the defendant, "it is dealt with as

14

if it were sought by the defense." *Sharp*, 786 So. 2d at 378 (¶7). "As such, continuances sought by the defense are charged against them." *Id*. This continuance cannot be attributed to the State.

¶38. Between February 7, 2013, and June 24, 2013, Jones withdrew and Michael Winfield was substituted as counsel. As the trial date neared, Michael Winfield withdrew based on a conflict of interest, and Nailor was appointed counsel on May 16, 2013. The trial was again continued to July 1, 2013, to allow Nailor time to prepare a defense. As stated, a preparatory delay for a defendant's benefit is not weighed against the State. This continuance was for good cause.

¶39. Upon review, we find that all of the delays were either attributable to Ames or were for good cause, and we find that Ames's statutory right to a speedy trial was not violated. Accordingly, we affirm.

¶40. **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS FOR COUNT I, WITH FIVE YEARS SUSPENDED, FIFTEEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TWENTY YEARS FOR COUNT II, WITH FIVE YEARS SUSPENDED, FIFTEEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**