# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00658-SCT

*EMERSON OSBORNE a/k/a EMMERSON OSBORNE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/2008 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/06/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from Emerson Osborne's conviction for capital murder in the Bolivar County Circuit Court.  Osborne received a life sentence without the possibility of parole.  Finding no error, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Eighty-six-year-old Lucy Jackson lived alone in Shelby, Mississippi.  Jimmy Giles had attended church with Jackson, so occasionally he would check on her.  Osborne and Otis Braboy had observed their arrangement and planned to rob Jackson.  On January 14, 2006,

Osborne and Braboy approached Giles and demanded that he knock on Jackson's door. Giles complied. After he identified himself, Jackson unlocked and opened the door. Osborne and Braboy rushed in and assaulted Jackson. Giles subsequently fled the scene. Osborne and Braboy ransacked the house but managed to flee with around forty dollars. Police discovered Jackson's body two days later. She had died from a head injury resulting from blunt-force trauma.

¶3.     Osborne, Giles, and Braboy were indicted on one count of capital murder with the underlying felony of robbery. The jury found Osborne guilty of capital murder, and the trial court sentenced him to life imprisonment without the possibility of parole. Osborne filed a Motion for New Trial or in the Alternative, a Judgment Notwithstanding the Verdict, which the trial court denied. The trial court also denied Osborne's two pro se motions as both procedurally barred and without merit. Osborne now appeals to this Court.

## DISCUSSION

**I.     The trial court did not abuse its discretion in refusing to declare a mistrial.**

¶4.     The decision to grant a mistrial rests within the sound discretion of the trial court. *Evans v. State*, 725 So. 2d 613, 649 (Miss. 1998) (citations omitted). This Court will reverse the trial court's decision only for an abuse of discretion. *Id.* Osborne contends that the trial court erred when it denied his motion for a mistrial after his counsel informed the court of a juror's improper statement made during voir dire. We disagree.

¶5.     Following the guilt phase of the trial, Christopher Hull, a former member of the venire panel, told Osborne's attorney that a sitting juror had made inappropriate comments during voir dire. Defense counsel informed the trial court of the allegation and stated that Hull had

2

identified the juror as Susie Pitts. The trial court then instructed that Hull must be brought in for sworn testimony on the matter. Within the hour, Hull testified before the trial court.

¶6. Hull testified that, while in the jury room, he had stated that he wanted to know whether he would serve on the jury rather than just "sitting and waiting." In response, a panel member had stated in front of at least two other jurors that, "I wish we would just hang him and get it over with and get out of here." Hull reprimanded the juror for her attitude, given the nature of the situation, but she did not respond. During Hull's testimony, he identified the juror by ethnicity, but he did not know the juror's name or where she worked. He also admitted that her statement may have been made out of frustration and that other members of the jury panel seemed anxious to "get out" of jury duty.

¶7. Defense counsel again told the court that Pitts was the juror who had made the statement, and the trial judge subsequently questioned her . Pitts could not recall making the remark, and she confirmed her impartiality prior to trial. Ultimately, the court determined her alleged statement was ambivalent and perhaps merely a poor choice of words indicating a desire to avoid jury duty like many others on the panel. The trial court also noted that it had asked a "litany of questions [during voir dire] with regard to her ability to render a fair and impartial verdict." Based on these facts, the trial court refused to grant the defense's motion for a mistrial.

¶8. Osborne now argues that Pitts's statement during voir dire expressed a "conclusion of guilt" and a conclusion regarding the appropriate outcome. He further argues that when questioned during voir dire about her ability to remain impartial, Pitts should have disclosed her bias, and her failure to do so is grounds for reversal.

3

¶9. If a prospective juror does not respond to a question posed during voir dire, this Court must determine whether the question was "(1) relevant to the voir dire examination; (2) . . . unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited." *Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978). If all answers to the above questions are affirmative, then we must determine if prejudice could be inferred from the juror's failure to respond. *Id.*

¶10. In order to reach the *Odom* questions, Osborne must show Pitts failed or refused to respond to a specific question on voir dire. While Osborne does not point to a particular question Pitts failed to answer during voir dire, the record does not indicate that she withheld information when she was questioned about her impartiality. Hull's allegation is the only evidence supporting this conclusion, and the trial court found that it lacked merit. But, assuming all the *Odom* questions are answered in the affirmative, Osborne suffered no prejudice from Pitts serving as a juror during the guilt phase of his trial.

¶11. To show prejudice, Osborne must demonstrate the trial court's determination that the jury was fair and impartial was clearly erroneous. *Ross v. State*, 954 So. 2d 968, 988 (Miss. 2007). Before trial, the court and both attorneys repeatedly asked venire members about their ability to remain impartial and decide the case on the evidence presented. Venire members confirmed their ability to render a verdict solely on the evidence presented at trial. During individual questioning about her views on the death penalty, Pitts affirmed that she would follow the law. Her post-trial questioning did not contradict her answers on voir dire. On each of these occasions, Pitts confirmed that she could perform her duties as required by law and that she had been impartial before Osborne's trial. The trial court determined that her

4

statement reflected an aversion to jury duty rather than bias or a preconceived notion of guilt. The trial judge repeatedly expressed the intent to grant defense counsel's request to replace Pitts with an alternate juror for the sentencing phase of Osborne's trial, although the record does not specifically state whether he acted on that intention. By virtue of his immediate perception of the witness and the events, the trial judge was in the best position to determine whether the jury was impartial. Therefore, the trial court properly exercised its discretion in refusing to grant a mistrial, and Osborne's claim for relief on this ground is denied.

**II. The trial court did not err in allowing the State to impeach its own witness.**

¶12. This Court's standard of review of a trial court's admission or exclusion of evidence is abuse of discretion. *Ladnier v. State*, 878 So. 2d 926, 933 (Miss. 2004). Reversal is proper only where "the error adversely affects a substantial right of a party." *Id.* (citation omitted). Osborne contends that the trial court erred by allowing the State to impeach its own witness without an on-the-record determination that the witness was hostile. We disagree.

¶13. The State called Robbye Braboy, the mother of Osborne's accomplice Otis Braboy. While walking in Jackson's neighborhood on the night of the incident, she had encountered Otis, Osborne, and Giles hanging out on the street. Robbye testified that, during the encounter, Osborne had told her to go home, and she did indeed go home because she was already headed there. Believing Robbye had changed her story, the State began asking leading questions to establish that she had gone home because she feared Osborne. Defense counsel objected, arguing that the State could not impeach its own witness. The State opined that any witness could be impeached and further claimed it was "surpise[d]" by Robbye's

5

testimony. The trial court determined the State had not crossed the line by asking leading questions. Eventually, the State asked Robbye if she had gone home because she was afraid of Osborne. Robbye answered affirmatively, and the trial court overruled the defense's objection.

¶14. Mississippi Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by *any* party, including the party calling him." Miss. R. Evid. 607 (emphasis added). Before a party may introduce unsworn pretrial inconsistent statements of its witness for impeachment purposes, a party must show "surprise *or* unexpected hostility. . . ." *Wilkins v. State*, 603 So. 2d 309, 322 (Miss. 1992) (emphasis added). We approved a disjunctive reading of the language in *Wilkins*; thus, a party may show *either* surprise *or* unexpected hostility before impeaching its own witness. *Wharton v. State*, 734 So. 2d 985, 986-87 (Miss. 1998).

¶15. Because the trial court did not have to determine whether Robbye had become hostile, Osborne's claim lacks merit. Further, any determination of whether the State was indeed "surprised" by her testimony would be premature. First, the record does not clearly indicate that Robbye's testimony at trial differed from her pretrial statement. Second, Osborne suffered no prejudice from the admission of any testimony elicited from Robbye. The record does not indicate that Robbye's prior inconsistent statement was ever offered for impeachment purposes, and her testimony did not provide any evidence linking Osborne to the crime.

¶16. Further, the decision to allow a party to ask leading questions during direct examination rests within the sound discretion of the trial court. *See* Miss. R. Evid. 611;

6

*Whitlock v. State*, 419 So. 2d 200, 203 (Miss. 1982). In other words, a trial court has general discretion to allow leading questions if needed for the development of a witness's testimony. *See Whitlock*, 419 So. 2d at 203. The use of leading questions is not ground for reversal unless the trial court abused its discretion, and the decision resulted in "substantial" injury to the appealing party. *Id. See also Gray v. State*, 799 So. 2d 53, 61 (Miss. 2001).

¶17. Osborne cannot show that part of Robbye's testimony elicited through leading questions prejudiced a substantial right, since testimony from other witnesses implicated Osborne as responsible for the murder. Therefore, Osborne is not entitled to reversal on this ground.

### III. The weight of the evidence supports the jury's verdict.

¶18. This Court will not order a new trial unless it finds that the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005) (internal citations omitted). When reviewing a challenge to the weight of the evidence, we accept the evidence that supports the verdict as true and will reverse a trial court's denial of a motion for new trial only when convinced that the trial court abused its discretion in denying the motion. *Valmain v. State*, 5 So. 3d 1079, 1086 (Miss. 2009). The evidence should be viewed in the light most favorable to the verdict, and "the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844. In support of his challenge to the weight of the evidence, Osborne argues that his conviction was based on the unreliable, inconsistent testimony of Giles, an accomplice, and Wesley Jefferson, an informant. Osborne contends that the lack of physical

7

evidence linking him to the crime, combined with unreliable testimony, fails to support the jury's guilty verdict. We address each of his arguments below.

¶19. Giles testified that he had watched Osborne beat Jackson with his fists and with a stick during the attack. He said he stood and watched the attack for two to three minutes. Giles testified that before he left, Otis had threatened to kill his grandmother if he told anybody what had happened. Giles admitted that, before trial, he initially had told investigators and the district attorney he could not identify Osborne. Giles explained that he had given inconsistent statements before trial because he was scared for his grandmother's safety.

¶20. Wesley Jefferson had been incarcerated in the same prison as Osborne. He testified at trial that, while they were in prison together, Osborne had discussed Jackson's murder. Jefferson's testimony about the incident was similar to that of Giles. Jefferson further testified that he had not received a plea deal or any other promise from law enforcement or other officials in exchange for his testimony.

¶21. Osborne contends that the testimony of Giles and Jefferson was not credible. The jury must weigh witness testimony and determine its credibility. *Massey v. State*, 992 So. 2d 1161, 1163 (Miss. 2008). This Court will not "pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." *Id.* (citation omitted). After hearing Giles and Jefferson, the jury was in the best position to determine the weight and credibility of their testimony. We reject Osborne's challenge to the weight of the evidence based on witness credibility.

¶22. Osborne also claims that Giles was an accomplice to the crime, and his uncorroborated testimony was suspect and contradictory. Generally, "[t]he uncorroborated

8

testimony of an accomplice may be sufficient to convict an accused. . . . [This] rule is inapplicable in those cases where the testimony is unreasonable, self contradictory or substantially impeached." *Ballenger v. State*, 667 So. 2d 1242, 1253 (Miss. 1995) (citation omitted). Only slight corroboration of an accomplice's testimony is required to sustain a conviction. *Magnum v. State*, 762 So. 2d 337, 342 (Miss. 2000). The testimony that must be corroborated is the part connecting the defendant to the crime. *Holmes v. State*, 481 So. 2d 319, 322 (Miss. 1985). If the testimony is not corroborated, a cautionary jury instruction is required. *Williams v. State*, 32 So. 3d 486, 491 (Miss. 2010).

¶23.    Here, Giles's testimony connected Osborne to the robbery that resulted in Jackson's death. While Giles had provided inconsistent accounts of the events, he explained his actions at trial. His testimony was reasonable and not substantially impeached. Further, Giles's testimony was corroborated. Jefferson's testimony also connected Osborne to the crime and substantially mirrored Giles's account of the events. Still, the jury was properly instructed on how to view Giles's testimony. At defense counsel's request, the court provided the following instruction:

> You must examine and weigh the testimony of someone who provides evidence against a defendant for immunity or leniency from punishment or for personal advantage or vindication with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case or prejudice against the defendant or by the benefits that the witness has received or hopes to receive either financially or as a result of being immunized from prosecution or granted leniency by the prosecution. You shall keep in mind that such testimony is always to be received with great caution and care. You should never convict any person upon the unsupported testimony of such witness unless you believe that testimony beyond a reasonable doubt.

9

¶24.    Osborne also contends his conviction is not supported because Jefferson was a "jail-house snitch." We have warned against accepting the testimony of an incarcerated informant at face value. *See Moore v. State*, 787 So. 2d 1282, 1287 (Miss. 2001); *McNeal v. State*, 551 So. 2d 151, 158 (Miss. 1989).  But in *Sherrell v. State*, we held that the trial court did not err in permitting the testimony of an informant when, among other things, no evidence showed that the informant would benefit from testifying against the defendant. *Sherrell v. State*, 622 So. 2d 1233, 1236 (Miss. 1993).  Also, one method of safeguarding against the potential untruthfulness that may accompany such testimony is providing a cautionary instruction to the jury. *See Moore*, 787 So. 2d at 1287; *Sherrell*, 622 So. 2d at 1236.

¶25.    Here, Jefferson specifically testified that no one had made promises to him in exchange for his testimony.  Further, the cautionary instruction discussed above sufficiently informed the jury of how to view Jefferson's testimony.  The jury was in the best position to evaluate  Jefferson's credibility in light of all his testimony. *Brown v. State*, 682 So. 2d 340, 347 (Miss. 1996).  Finally, we have upheld convictions, even where the trial court denied a requested proper cautionary instruction regarding suspicious testimony, if the record indicated that the witness had not in fact received any preferential treatment or promises from law enforcement in exchange for his or her testimony. *Manning v. State*, 735 So. 2d 323 (Miss. 1999); *Gray v. State*, 728 So. 2d 36, 72 (Miss. 1998).  Because the record does not show Jefferson received any preferential treatment for his testimony, and the court provided a cautionary instruction, we reject Osborne's challenge to his conviction on this ground.

¶26.    Viewing the evidence in the light most favorable to the verdict, we cannot conclude the jury's guilty verdict contradicted the overwhelming weight of the evidence.  The trial

10

court did not abuse its discretion in declining to grant a new trial, and Osborne's claim for relief on this ground is denied.

**IV.    Whether cumulative error warrants a new trial.**

¶27.    Under the cumulative-error doctrine, individual harmless errors may be aggregated with other errors to create reversible error "where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (Miss. 2007). However, where the Court does not find any error in the case, there can be no cumulative error that warrants reversal. *Harris v. State*, 970 So. 2d 151, 157 (Miss. 2007). Because no errors regarding Osborne's conviction would warrant reversal, we deny his claim for relief on this ground.

## CONCLUSION

¶28.    For the foregoing reasons, we affirm the judgment of the circuit court.

¶29.    **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED.**

   **CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND DICKINSON, J.**

   **KITCHENS, JUSTICE, DISSENTING:**

¶30.    Because the trial judge erred by refusing to grant a mistrial based on juror Pitts's statement that she "wish[ed] we would just hang him and get it over with," I respectfully dissent.

¶31.    The majority holds that "[t]o show prejudice, Osborne must demonstrate the trial court's determination that the jury was fair and impartial was clearly erroneous," citing *Ross*

11

***v. State***, 954 So. 2d 968, 988 (Miss. 2007).  However, the ***Ross*** Court was  presented a very different question: whether a venire member's comment that she had testified against the defendant tainted the entire jury pool.  ***Id.***  The controlling standard in the present case is more stringent.  When a juror withholds information that would have provided a valid basis for a challenge for cause, as was Juror Pitts's expression of bias in the present case, prejudice is presumed.  ***Myers v. State***, 565 So. 2d 554, 558 (Miss. 1990).  In ***Myers***, 565 So. 2d at 558, we explained:

> Following a jury's verdict, where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we *must reverse* on appeal. *We presume prejudice*. Where, as a matter of common experience, a full and correct response would have provided the basis for a peremptory challenge, not rising to the dignity of a challenge for cause, our courts have greater discretion, although a discretion that should always be exercised against the backdrop of our duty to secure to each party trial before a fair and impartial jury.

(Emphasis added.)  Thus, in the present case, the trial judge is not given same amount of discretion as in an instance in which the withheld information would have provided a basis for a peremptory challenge.  ***Id.***

¶32.   Notably, before trial, Juror Pitts called the circuit clerk's office and asked to be excused.   On the day of trial, the trial judge conducted an individual examination of Pitts, during which she stated that jury service would cause her an undue financial hardship.  She also told the court that she was trying to sell her house and needed to make repairs to it.  Without objection from either party, the trial judge refused Pitts's request.  After a verdict was reached, the court learned, through former venireman Hull, that Pitts had told other

jurors during voir dire examination, "I wish we would just hang him and get it over with and get out of here."

¶33.    In denying the defendant's motion for mistrial, the court reasoned that "it was a poor choice of words," and "if it was a reflection on the death penalty, that wouldn't apply, I don't think, in the guilt phase." The majority accepts this reasoning, concluding that "an aversion to jury duty" would not indicate prejudgment of the case. However, the motive behind her statement, whether it was a predilection for the death penalty or a desire to go home, is immaterial because, under either circumstance, Pitts's verdict would not have been based only upon the law and the facts. Her ability to be fair and impartial would have been impeded whether she was motived by a desire to "just hang him," as she purportedly told the other veniremen before trial, or "to get out of here" and "get to work," as she told the trial court after the jury had rendered its guilty verdict. Her lack of impartiality, if known to defense counsel, would have provided a valid basis for a challenge for cause; thus, we must presume prejudice and reverse. *Myers*, 565 So. 2d at 558.

¶34.    The majority also relies on the trial judge's examination of Pitts; but by that time, the judge already had made his ruling denying a  mistrial. Furthermore, because a juror cannot impeach her own verdict, the trial judge would have been prohibited from asking the juror the basis for her voting to find the defendant guilty. M.R.E. 606(b). *See also* **Gladney v. Clarksdale Beverage Co., Inc.**, 625 So. 2d 407, 419 (Miss. 1993) ("[I]n the interests of protecting the jury system, and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberations of the jurors.") (quoting **Tanner v. U.S.**, 483 U.S. 107, 125, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987)).

13

¶35.   The majority also faults Osborne for not "point[ing] to a particular question Pitts failed to answer during voir dire;" yet, in his brief, Osborne cites three sections of the record where the trial court, the State, and the defense counsel asked the venire members whether they could be fair and impartial.

¶36.   Finally, though not relevant to the issue of juror impartiality, I take issue with the majority's characterization of the facts.  The opinion states the facts as if they were undisputed; yet, these facts were indeed disputed, and the bulk of the evidence against Osborne came from one of his alleged accomplices and a jailhouse informant.

¶37.   Juror Pitts's statement, no matter her motive, clearly called into serious question her ability to be fair and impartial, despite her representations to the contrary during voir dire examination.  Because her expressed bias would have provided a valid basis for a challenge for cause, had it been known at the time by defense counsel, the trial judge should have granted a mistrial. Therefore, I respectfully dissent.

**GRAVES, P.J., AND DICKINSON, J., JOIN THIS OPINION.**