GRIFFIS, J.,
for the Court.
¶ 1. Verenzo Green was convicted of conspiracy to commit a crime. He was sentenced to five years in the custody of the Mississippi Department of Corrections (“MDOC”). Green appeals the conviction. He claims that the circuit court erred in denying his motion for a new trial because the verdict is against the overwhelming weight of the evidence. We find no error and affirm.
FACTS
¶ 2. Green was incarcerated at the Natchez City Jail on prior convictions for possession of a weapon by a convicted felon and drug possession. During his incarceration, Green was romantically involved with Jessica Emfinger and Ellen Ayers. Emfinger testified that she received a series of phone calls from Green prior to and during his incarceration. Em-finger testified that Green asked her to call his mom and get soap and toothpaste for him. He then asked Emfinger to go to Broadmoore grocery, pick up some “burn” (i.e., marijuana), put it in a soap box, bring it to the jail, and give it to the female jailer. Emfinger followed Green’s instructions except she gave the package to a male jailer, Ricky Hinson.
¶ 3. Hinson testified that he received the package. He found' the package suspicious. When he opened it, he found a piece of soap, a lighter, a dollar bill, rolling papers, a hydrocodone with acetaminophen tablet (Lorcet), and marijuana. Hinson turned the package over to his supervisor, Gary Nations.
¶ 4. Nations, a criminal investigator with the Natchez Police Department, ascertained Emfinger’s identity and called her *1088 in for questioning. At first, Emfinger denied having any knowledge about the package. Emfinger subsequently admitted knowledge of the package and implicated Green. However, Emfinger did admit that Green did not ask for the Lorcet. Emfinger was arrested and held in the Natchez City Jail from May 12 to May 16, 2008.
¶ 5. During her incarceration, Emfinger’s mother gave her two letters, one postmarked May 12, that were mailed to Emfinger’s home address. The return address of the letters contained Green’s name and jail address. Emfinger identified the handwriting in the letters as Green’s handwriting. Also, during her incarceration, Emfinger received a letter that was slipped under her door. She identified the handwriting in that letter as Green’s. Emfinger turned the letters over to Nations.
¶ 6. Two witnesses testified on Green’s behalf, both of which were Green’s relatives. Green’s mother testified that she did not give Emfinger soap and toothpaste. Green’s mother also testified that the handwriting in the letters was Green’s. Ashley Williams, Green’s cousin and a female jailer, testified that while Green and Emfinger were both incarcerated, a male inmate gave her a letter that was supposed to go to Green. Williams, assuming the letter was from Emfinger, took it to her and told her if she wanted to send a letter, she must use a stamp.
¶ 7. On August 13, 2008, Green was indicted for conspiracy to introduce a controlled substance into the Natchez City Jail. After a trial, Green was convicted of conspiracy to introduce a controlled substance into a correctional facility and sentenced to five years in the custody of the MDOC. On November 12, 2008, Green filed a motion for a new trial, which was denied.
STANDARD OF REVIEW
¶ 8. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The evidence is weighed in the light most favorable to the verdict. Id. “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
ANALYSIS
¶ 9. Green argues that the only evidence that he was involved in a conspiracy to bring a controlled substance into the Natchez City Jail was the testimony of Emfinger. He claims that Emfinger’s testimony was unreliable and confusing. Green also argues that Emfinger denied knowing anything about the items found in the package and did not confess her knowledge until she was interrogated by Nations. He contends that Emfinger knew he had other girlfriends, and this fact made Emfinger uncomfortable and upset, causing her to try to get back at him for seeing many different women. The State’s evidence, discussed above, established that Gi’een and Emfinger agreed to introduce a controlled substance into the Natchez City Jail.
¶ 10. Green also argues that evidence was px*esented establishing that the letters Emfinger claimed were sent to her were not sent by Green, and the only evidence the letters were associated with him was *1089 from the testimony of Emfinger. The letters that were sent to Emfinger’s home contained Green’s name and jail address as the return address. The first letter sent on April 30, 2008, indicated that Green and Emfinger were romantically involved. It contained the following language:
Hey Boo. What you up to. Me, just waiting on Sunday. Have you been being good? Thank a hell of a lot for accepting my phone calls. I will never forget this. I owe you one. Look, I need to talk to you on Friday. So make sure you are at home. Stay real to yourself and in love with me.
The content of the second letter, postmarked May 12, 2008, referenced that Green did not receive the package. The second letter contained the following language:
Look the sack didn’t make it. So I would think it’s best if you didn’t show your face around here anymore. Okay. Thanks for trying.... I love you and respect you to the fullest. The good thing about this whole thing is they don’t know who you are or where you come from. Look, did you go to court today. I know yesterday you left the block and talked to somebody. What about?
Once Green found out that Emfinger had been incarcerated, he sent her another letter. This letter was slipped underneath the door of Emfinger’s jail cell. It indicates that Green was trying to tell Emfinger what to say to the police. It contained the following language:
Look, you got paid twenty dollars to bring a bag to the guy, who paid, a girl from across the water named whoever.... You never talked to him. He don’t know y[’]all from a can of paint. That’s what he told them. That’s all you know, and that’s all you’re going to know.
¶ 11. The letters clearly indicate that Green and Emfinger were conspiring to introduce contraband into the Natchez City Jail. They also show that Green and Emfinger were involved romantically, regardless of whether Green had other girlfriends. These letters are evidence that Emfinger was trying to comply with Green’s request for the contraband rather than get back at him for being involved with other women.
¶ 12. It is the jury’s responsibility to evaluate the credibility of a witness. Smith v. State, 821 So.2d 908, 910(¶ 4) (Miss.Ct.App.2002). “The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity.” Id. (quoting Ford v. State, 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999)). The jury - accepted and believed Emfinger’s testimony.
¶ 13. We find that the verdict is not against the overwhelming weight of the evidence and allowing the verdict to stand will in no way result in an unconscionable injustice. Thus, this issue has no merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF CONSPIRACY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.