ISHEE, J.,
for the Court:
¶ 1. In July 2011, a grand jury in Lafayette County, Mississippi, indicted Anthony Carothers on two counts of aggravated assault. The indictment charged Caroth-ers with having shot at Sheena Carothers.' It also charged that he later slammed her head into the pavement, punched, and kicked her. After a trial took place in the Lafayette County Circuit Court, Carothers was convicted óf both counts of aggravated assault. The circuit judge sentenced him on each count to twenty years, with five years to serve and fifteen years suspended, with the sentences to run consecutively, all in the custody of the Mississippi Department of Corrections (MDOC). Car-others filed a motion for a judgement notwithstanding the verdict (JNOV) or, in the alternative,. a new trial. The motion was denied. Aggrieved, Carothers appeals. Finding reversible error, we reverse and remand this case for a new trial consistent with the findings of this opinion.
STATEMENT OF FACTS
¶ 2. Carothers and Sheena are half siblings. The record indicates that Carothers used to take care of Sheena’s children *333 often when she needed help. On March 18, 2011, Sheena took her children to Car-others’s house for him to keep them while she went to a casino. Sheena was accompanied in her vehicle by her friend, Ta-nesshia Tyson, and Tyson’s boyfriend, Jesse Booker. They entered Carothers’s house, and Carothers indicated to Sheena that he was unable to watch the children at that time. An argument ensued between Sheena and Carothers. The record then varies as to the subsequent series of events.
¶ 3. Sheena exited the home, followed by Carothers. Tyson walked out behind Car-others. Tyson told authorities that she immediately noticed that Carothers was holding a gun. Carothers, who testified on his own behalf at trial, disputes this fact. According to Carothers, he eventually agreed to keep the children after Sheena went into a rage. He followed Sheena out of the home, unarmed, and attempted to get her young son out of the back seat. He claims Sheena then .grabbed a heavy tool from inside her car and hurled it at him. He asserts that she missed him, but the tool broke her car window. He stated that she then got in her vehicle and started to back out of his driveway at a high rate of speed with the small boy in the back seat; he claims he chased them on foot but eventually lost sight of them. Carothers testified that once the vehicle was out of his sight, he returned to his home to care for the other children who were inside. Carothers opines that Sheena’s erratic driving at high speeds on a curvy roadway must have caused her to lose control of her vehicle and crash her car.
¶ 4. Conversely, Tyson claimed Caroth-ers chased Sheena out of his house with a gun, threatening to shoot her. She claimed Sheena then got in her vehicle and sped away from the house with one of the small children in the back seat. Tyson claimed that Carothers shot at the vehicle, breaking the car’s -window. Tyson also asserted that she witnessed Carothers get in his truck and race after Sheena.
¶ 5. The Lafayette County Sheriffs Department was contacted regarding the shooting. According to Investigator Jarett Bundren, who testified that he spoke with Sheena in the hospital immediately after the incident, Sheena told him that after Carothers started chasing her in his truck, he hit her vehicie several times before she collided with a truck head-on and landed in a field. He asserted that she also told him that after her vehicle had stopped, she got out of the car and started running. Investigator Bundren testified that Sheena stated Carothers soon caught up to her and began assaulting her by slamming her face into the pavement, punching her, and kicking her.
¶ 6. Investigator Bundren also observed Sheena’s injuries. He stated they appeared to be severe. He testified that medical staff informed him Sheena had suffered a lacerated liver and had shattered her kidney. Investigator Bundren stated that Sheena suffered trauma to her face, including an eye that was swollen shut. However, when Investigator Bun-dren returned to the hospital the following morning to have Sheena give them a formal statement and sign a release for them to review her medical records, Sheena informed them that she would do neither. She also told them that she. was the cause of the incident, not Carothers.
¶ 7. Sheena testified during both a bond hearing and at trial that the story told by Investigator Bundren was false. She claimed she had never spoken with Investigator Bundren. In her recounting of the incident in question, she asserted that she flew into an unjustified rage when Caroth-ers told her he would be unable to watch *334 her children. She testified that after a heated argument with Carothers at his house, she threw a heavy tool at him while he was attempting to get her young son out of the vehicle, and that the tool broke her car window. She stated that she then sped away from the home, lost control of her vehicle while turning into a deep curve, hit a parked vehicle head-on, and was subsequently injured in the crash since she was not wearing a seatbelt.
¶ 8. Carothers was indicted on two counts of aggravated assault stemming from the incident. A trial took place in October 2011. The State called several witnesses, including Tyson, Investigator Bundren, and Sheena. Shortly after the State commenced its direct examination of Sheena, the prosecution requested that Sheena be treated as a hostile witness. The defense objected on the ground that “just because [the State’s attorneys] don’t like her responses!,] that doesn’t mean she’s being hostile. She isn’t being hostile. She’s just answering the questions.” The State responded by stating, “It is hostility. It’s about to get ugly.” The circuit court deemed Sheena a hostile witness, and the examination continued.
¶ 9. At the close of trial, the jury returned a guilty verdict on both counts. Carothers filed a motion for a JNOV or, in the alternative, a new trial. The motion was denied, and Carothers was sentenced on each count to twenty years, with fifteen years suspended and five years to serve and with the sentences to run consecutively, all in the custody of the MDOC. On appeal, Carothers asserts the following: (1) the circuit judge erred by allowing the State to treat Sheena as a hostile witness; (2) the circuit court erred by denying his motion for a JNOV or, in the alternative, a new trial; (3) the circuit court erred by refusing certain jury instructions; and (4) the circuit court erred by allowing certain evidence to be introduced.
DISCUSSION
 ¶ 10. Although Carothers raises several issues on appeal, we find his first issue to be dispositive. We agree with Carothers’s initial argument that the circuit court improperly allowed the State to treat Sheena as a hostile witness. Issues of this nature are reviewed under an abuse-of-discretion standard. See Young v. State, 99 So.3d 189, 193 (¶ 14) (Miss.Ct.App.2011) (citation omitted); McFarland v. State, 707 So.2d 166, 175 (¶ 30) (Miss.1997) (citations omitted). We find the circuit court abused its discretion and committed reversible error by classifying Sheena as a hostile witness. Since this warrants a new trial, we decline to address the other claims raised by Carothers.
¶ 11. Carothers asserts that the State failed to lay the proper foundation to show that Sheena was an adverse or hostile witness. Sheena had only just begun answering the State’s questions regarding what had happened during the incident in question when the State requested that she be deemed hostile. The following dialogue ensued:
The State: Your Honor, permission to treat the witness as hostile.
The Court: Do you want to be heard?
The Defense: I don’t believe there’s been any hostility shown to the district attorney’s office.
The State: Your Honor, this is going exactly the same way it did at the bond hearing.
The Defense: Your Honor, can we approach the bench?
(THE FOLLOWING TOOK PLACE AT THE BENCH OUTSIDE THE HEARING OF THE JURY)
*335 The Defense: Your Honor, just because they don’t like her responses[,] that doesn’t mean she’s being hostile. She isn’t being hostile. She’s just answering the questions.
The State: Your Honor, the fact that this is the exact testimony she gave when she was [the Defense’s] witness at the bond hearing shows—
The Defense: She’s consistent.
The State: It is hostility. It’s about to get ugly.
The Defense: She’s been consistent.
The State: Consistent to [defense counsel’s standards]. She’s not being consistent.
The Court: I think she’s clearly adverse. It doesn’t mean she’s lying, but she’s not telling the story [the investigators] tell. I’m going to allow [the State] to treat her adverse [sic].
The State then continued its direct examination of Sheena by impeaching her with prior statements she had made to Investigator Bundren. These statements contradicted her testimony at Carothers’s bond hearing, which took place in April 2011, as well as her testimony at trial prior to being deemed a hostile witness.
¶ 12. This Court addressed a similar issue recently in James v. State, 124 So.3d 693 (Miss.Ct.App.2013). There, we recognized that “[b]efore a party will be authorized to introduce[,] for impeachment purposes[,] an unsworn pretrial inconsistent statement of his own witness, it will be necessary thát he show surprise or unexpected hostility.” Id. at 699 (¶ 17) (quoting Wilkins v. State, 603 So.2d 309, 322 (Miss.1992)). Indeed, it is well established that a proponent must show surprise or unexpected hostility before it may impeach its own witness. See Osborne v. State, 54 So.3d 841, 845 (¶ 14) (Miss.2011); Wharton v. State, 734 So.2d 985, 986-87 (¶ 7) (Miss.1998); Whitehead v. State, 967 So.2d 56, 67 (¶ 21) (Miss.Ct.App.2007).
¶ 13. Carothers asserts that the State was not surprised by Sheena’s responses to the questions. He argues that the State cannot claim surprise or unexpected hostility because the State even admitted to the circuit court that “this is the exact testimony she gave when she was [the Defense’s] witness at the bond hearing.” Sheena did, in fact, testify at Carothers’s bond hearing in April 2011. A review of the record indicates that Sheena’s testimony from the bond hearing essentially mirrors her testimony at trial. Additionally, no blatant hostile behavior had been exhibited at the trial prior to the State’s request that Sheena be treated as a hostile witness. We find that the State did not lay the proper foundation for proving that Sheena was a hostile witness. ■ Accordingly, the circuit court committed error in deeming her an adverse or hostile witness.
¶ 14. However, in order to constitute reversible error, the error must also be prejudicial. “[T]o find harmless error, we look for proof of guilt that is overwhelming.” James, 124 So.3d at 700 (¶ 19) (citations omitted).
¶ 15. Here, the circuit court’s decision to treat Sheena as a hostile witness opened the door for the prosecution to introduce impeachment evidence against her. The prosecution was therefore able to contradict one of the primary witnesses whose testimony favored Carothers. Had the impeachment evidence not been introduced, her testimony would have corroborated Carothers’s testimony without any mention of her prior inconsistent statements.
¶ 16. Additionally, although the State produced several witnesses, including Tyson and Investigator Bundren, to testify against Carothers, we cannot say that the *336 evidence of guilt was overwhelming. While Tyson witnessed the alleged shooting and Carothers’s alleged car chase with Sheena, Carothers’s and Sheena’s testimonies both contradict Tyson’s. Also, no one but Sheena actually witnessed the car crash. Without the impeachment evidence against Sheena, we cannot find that the proof of Carothers’s guilt was overwhelming. As such, we hold that the circuit court committed reversible error. Therefore, the circuit court’s judgment is reversed, and this case is remanded for a new trial consistent with this opinion.
¶ 17. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON AND MAXWELL, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.